H. D. HORNEY, as Executor of the Will of Frank Rhea, deceased, v. MAY DARST RHEA.

12 So. (2nd) 302　　　　　　　　　　　January Term, 1943
March 2, 1943　　　　　　　　　　　　　　　　　Division B
Petition for Rehearing and Motion for Clarification denied March 26, 1943.

*Redfearn & Ferrell* and *G. P. Smythe,* for appellant.
*Ralph Richards,* for appellee.

SEBRING, J.:

This is a case wherein the widow has dissented from the terms of the will of her deceased husband and has elected to take dower. The estate consisted exclusively of personal property, appraised at $112,000. The will, which was duly probated, had attached to it a paper writing executed by the widow in the lifetime of decedent, which reads as follows:

"I, May Darst Rhea, having seen, read and understood the last Will and Testament of my husband, Frank Rhea, dated and signed October 2, 1933, with a codicil dated and signed July 9, 1936, in consideration of the bequests made as stated in Item IX of the Will, and as revised by the codicil, do hereby agree to and accept the provisions of said Will and codicil.

"This 27th day of July, 1936.     May Darst Rhea (SEAL)
"Witness:

"Guy Darst."

On a contest between the widow and the executor, the County Judge entered an order denying her petition for assignment of dower. This order is based on the above "ac-

ceptance" and testimony concerning the facts surrounding its execution. On review, the Circuit Judge reversed the order of the County Judge. The question is whether the widow has so bound herself by the election as to bar herself from claiming dower.

From an interpretation of the whole evidence it clearly appears that at the time Mrs. Darst accepted the provisions of the will she was entirely ignorant of the value of her husband's holdings, which at that time were worth approximately $80,000.00. In fact, it appears that this information was kept from her by her husband. Aside from some household furniture worth not more than $25.00, a trust provision in the will provided her a life income of not more than $250.00 a year, to commence at the death of testator; and such sums for hospital and medical attention as in the sole discretion of the trustee should be necessary for her health and comfort. At the time she executed her acceptance of the will, Mrs. Rhea was 70 years of age, and in failing health. As shown by the American Experience Mortality Tables, she had a life expectancy of 8 years. Although these tables are not in evidence, we may take judicial notice of them. Holstun & Son v. Embry, 124 Fla. 554, 169 So. 400. It is apparent, therefore, that even if Mr. Rhea had died immediately after the execution of the release by the wife, the amounts which his widow could have hoped to have realized from the trust were small, as compared to the present right of dower in an estate appraised at $112,000.00.

Several months after the acceptance of the will by Mrs. Rhea, her husband established a living trust, by the terms of which Mrs. Rhea was to receive a life income of $150.00 a year, beginning immediately. This trust was created without her knowledge and consent; and it is not altogether certain from the evidence that it had any connection whatever with the purported marriage settlement. The executor contends, however, that it was set up for the purpose of anticipating the trust provisions in the will. Whether it was or not, there can be no doubt that Mrs. Rhea has received $900.00 from the trustee, derived from this fund. However, she has offered to do equity by returning this amount into court, even though

she contends that it had no connection with her release. The Circuit Judge has found that this should be done, and we agree with his conclusion.

Before a wife may be prevented from dissenting from a will by reason of an agreement made during her lifetime, it must be shown not only that the consideration was adequate, and that the entire transaction was fair and equitable from the wife's point of view, but that it was freely and voluntarily entered into with competent advice and with full knowledge of her interest in the estate, and its approximate value. Tavel v. Guerin, 119 Fla. 624, 160 So. 665, and cases cited therein with approval. The burden of making this showing rests upon the shoulders of the personal representative, and it is not incumbent upon the wife, in the first instance, to negative these elements.

Upon these principles, there is nothing now in the acceptance executed by the wife in her husband's lifetime, or in her conduct, to prevent Mrs. Rhea from dissenting from the terms of the will and electing dower. Particularly is this true, we think, when it is considered that she has offered to do equity, by returning all amounts received by her from the living trust, allegedly set up as the result of her agreement. Not only was the entire transaction, so far as Mrs. Rhea was concerned, unfair and inequitable; but the evidence is undisputed that she had no knowledge of the value of her husband's estate, at the time she executed the instrument. This is enough to sustain her position. Travel v. Guerin, *supra*.

In conclusion, we must take notice of one finding appearing in the order entered by the learned Circuit Judge below, which we think was erroneously made. The order found that the widow was entitled to one-third of decedent's estate, plus all mesne profits earned or produced by said one-third share from the date of the death of decedent. He found also that the widow's one-third "is free from all liability for . . . estate and inheritance taxes, and all costs, charges, and expenses of administration." This was an erroneous finding. The finding should have been that the widow's one-third "shall be ratably liable with the remainder of the estate for all estate and inheritance taxes and all costs, charges and expenses of admin-

istration." See Sec. 1, Ch. 18999, Laws of Florida, 1939, amending Sec. 35 of the Florida Probate Act. In this respect, therefore, the order of the Circuit Judge must be reversed. In all other respects it is affirmed.

It is so ordered.

BUFORD, C. J., BROWN and THOMAS, JJ., concur.